UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WADHAH THOMAS,

                Petitioner,                Case No. 5:12-cv-11393
                                                Hon. John Corbett O'Meara

v.

DEBRA L. SCUTT,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Macomb Circuit Court of assault with intent to murder, MICH. COMP. LAWS § 750.83, assault with a dangerous weapon, MICH. COMP. LAWS § 750.82, and carrying a concealed weapon (CCW), MICH. COMP. LAWS § 750.226. As a result of these convictions, Respondent now holds Petitioner in custody for terms of 108-to-180 months for the assault with intent to murder conviction, 9-to-48 months for the assault with a dangerous weapon conviction, and 14-to- 60 months for the CCW conviction.

The habeas petition enumerates four claims:

I. Petitioner was denied the effective assistance of counsel because his counsel did not communicate the plea offer to Petitioner prior to trial.

II. Petitioner was denied the effective assistance of counsel because trial counsel did not request the services of an interpreter and this failure compromised Petitioner's ability to understand and communicate with trial counsel and participate in his defense.

III. Petitioner was denied the effective assistance of trial counsel because defense counsel did not call four witnesses whose testimony would have refuted the testimony of the prosecutor's testimony and would have furthered a claim of self-defense.

IV. Petitioner was denied the effective assistance of counsel by his counsel's failure to properly advise Petitioner of his right to testify on his own behalf, depriving him of the opportunity to claim self-defense.

The petition will be denied because Petitioner's claim are without merit. The Court will also deny Petitioner a certificate of appealability and deny him permission to proceed on appeal in forma pauperis.

## I. Background

Petitioner's convictions stem from a stabbing that occurred outside a convenience store in Macomb County, Michigan.

At trial, the evidence indicated that in the early morning hours of January 16, 2005, the victim–Gary Zatorski–and three friends were at a 7-11 store. As they were preparing to leave, a BMW pulled up, and the driver challenged someone in the victim's car. After an exchange of words, the man from the BMW started to fight with one of the victim's friends.

In response, a group of men, including Petitioner, emerged from the store and entered the fray on the side of the man who had arrived in the BMW. Additional cars arrived with more men who sided with the man from the BMW. All told, eight to twelve men were fighting with the victim and his three friends.

One of the victim's friends testified that he saw Petitioner pull a knife and approach him. He threw his hands up and backed off, saying, "put the knife away." Another of the victim's friends saw Petitioner then approach the victim, who was no longer fighting, and

stab him in the back. Everyone scattered. The store clerk let Petitioner and other men from his side of the fight back into the store, but he would not call 9-1-1.

The victim's friends drove him to the hospital. The wound required surgery and a two day stay.

A surveillance tape showed the men emerging from the store. Two of the victim's friends identified a man with a beard, black shirt, and gold chain seen in the video as the man who stabbed the victim. When Petitioner was subsequently shown a still photo taken from the surveillance video by the police, he admitted that he was the man with the beard, black shirt, and gold chain in the video.

Based on this evidence, Petitioner was convicted and sentenced as indicated above.

Following his conviction and sentence, Petitioner filed a motion for a new trial, claiming that he had received the ineffective assistance of trial counsel. Specifically, Petitioner claimed that his counsel should have requested an interpreter, told Petitioner about a plea offer made by the prosecutor, failed to call defense witnesses, and failed to advise Petitioner about his right to testify. The trial court held a three-day evidentiary hearing on the claim.

Petitioner's retained trial attorney, Kenneth Hardin, testified at the hearing that he had no difficulty communicating with Petitioner in English. While Hardin sometimes had to repeat some explanations, they were able to understand each other without any need for an interpreter. Hardin also testified that Petitioner was aware of and rejected all of the prosecutor's plea offers. Hardin had discussed with Petitioner the possible immigration consequences of a plea, and that factored into Petitioner's decision not to accept any plea offers.

Hardin testified that he and his associate, Jay McDonald, interviewed Petitioner's proposed witnesses at his office, and they had a discussion about whether to call any of them with Petitioner. Hardin did not recall any disagreement with Petitioner on his decision not to call the witnesses. Hardin and McDonald also discussed with Petitioner his right to testify and advised him not to do so because they thought he would not make a credible witness.

An assistant prosecutor testified that he was informed that Petitioner decided not to accept any plea offer to a ten-year felony because of possible immigration consequences.

Petitioner admitted at the hearing that he discussed with both of his attorneys whether or not he should testify. He testified that he had discussed testifying at trial with his attorneys, knew he had a right to testify, and agreed not to testify.

The trial court denied the motion for new trial in a written opinion and order dated April 6, 2009.

Petitioner then filed a claim of appeal in the Michigan Court of Appeals, but it was dismissed for being filed late. *People v. Thomas*, No. 293294 (Mich. Ct. App. Aug. 26, 2009). Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising what now form his four habeas claims. The application was denied "for lack of merit in the grounds presented." *People v. Thomas*, No. 297388 (Mich. Ct. App. September 21, 2010).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Thomas*, 489 Mich. 860 (2011) (table).

II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

5

decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24.

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

### III. Discussion

All four of Petitioner's claims assert that he was denied the effective assistance of counsel. Respondent asserts that Petitioner has not demonstrated entitlement to habeas relief because the claims were reasonably rejected by the state courts.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the

7

challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

In this case, the trial court rejected Petitioner's claims after holding an evidentiary hearing, stating as follows:

> Defendant contends that he should be granted a new trial based upon ineffective assistance of counsel. Defendant argues that his trial counsel was ineffective by failing to: 1) communicate a plea offer to him prior to trial; 2) secure the services of an interpreter for trial; 3) interview and call at least four prospective defense witnesses to establish a claim of self-defense; and 4) advise Defendant he should take the stand in support of his defense.
>
> A new trial Is appropriate when an irregularity has adversely affected the substantial rights of some or all of the parties, denying the moving party a fair trial. *People v. Carlos Jones*, 203 Mich. App. 74, 79 (1993). It may also be granted where an error of law occurred. *Id*. On the defendant's motion, the Court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice. MCR 6.431 (B).
>
> A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden. To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Pickens*, 446 Mich. 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not perfonning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, supra at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id*. at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687. To demonstrate

prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. *People v. Carbin*, 463 Mich. 590, 599-600 (2001).

   The Court will first address Defendant's argument that trial counsel was ineffective by failing to communicate the People's offer to a plea agreement. An attorney's failure to advise his or her client of a prosecution plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). Although failure to adequately communicate about a plea offer may constitute ineffective assistance of counsel, defendant must prove by a preponderance of the evidence that an offer was made, that his attorney failed to adequately communicate about the offer, and that he would have accepted the offer. *People v. Williams*, 171 Mich. App. 234, 241-242 (1988). In the case at hand, Defendant was initially represented by Kenneth Hardin. Mr. Hardin testified at the *Ginther* hearing that he turned over the primary representation of Defendant to his associate, Jay MacDonald. Mr. MacDonald has subsequently moved out of state, so was unable to testify about the case. However, Mr. Hardin testified that he recalled discussing plea negotiations with both Mr. MacDonald and Defendant, and that Mr. MacDonald had conveyed the plea negotiations to Defendant, but that Defendant would not accept a plea because of collateral issues of immigration problems. (Tr. 10/31/08, pp. 22 - 24). The Court is consequently satisfied that Defendant has failed to establish by a preponderance of the evidence that Mr. MacDonald failed to communicate the plea negotiations with him prior to trial, thereby precluding his claim of ineffective assistance of counsel based upon this issue.

   The Court will next address Defendant's claim of ineffective assistance of trial for failure to secure an interpreter. Whenever it appears that a defendant is incapable of understanding the nature of, or of defending himself in, the proceedings against him because he is unable to understand the English language, an interpreter should be appointed in his behalf. *People v. Atsilis*, 60 Mich. App. 738, 739 (1975). However, in *Atsilis*, the Court was not asked to determine whether the failure to hire an interpreter constituted ineffective assistance of counsel. *Id.* Rather, the Court was discussing the trial judge's responsibility to appoint an interpreter where that trial judge is aware of the defendant's difficulty understanding English. *Id.* In the case at hand, defendant has not established that his counsel's failure to have an interpreter appointed constituted ineffective assistance because

9

> Defendant has not shown that he was prejudiced by this purported error. Defendant has neither detailed any instance in which his language skills affected the outcome of the trial, nor has he described how the outcome of his trial was tainted because of the lack of an interpreter at the defense table. Further, Mr. Hardin testified he believed that Defendant did not have any issues understanding the English language. (Tr., 10/31108, pp. 11, 36). Consequently, Defendant has failed to establish his claim of ineffective assistance of counsel based upon this issue.
>
> The Court will next address Defendant's argument that trial counsel was ineffective by failing to interview and call at least four prospective defense witnesses to establish a claim of self-defense, and advise Defendant he should take the stand in support of his defense. Defendant has presented affidavits to support his argument that he had witnesses to testify on his behalf that he was acting in self-defense in the altercation that gave rise to the charges at hand. Decisions as to whether to call witnesses are presumed to be matters of trial strategy, *People v. Mitchell*, 454 Mich. 145, 163 (1997), and the decision whether to testify is a criminal defendant's own to make personally. See *Rock v. Arkansas*, 483 U.S. 44, 52 (1987). Mr. Hardin testified that Defendant made the decision not to testify. (Tr., 1 0/31/08, p. 17). That decision often constitutes a crucial aspect of trial strategy. The evidence presented at trial, including but not limited to the statements made to the police, the testimony of the complaining witnesses and the video tape inside the store are sufficient to refute a claim of self defense. Defendant's claim of self defense would therefore be viewed as incredible, as was Mr. Hardin's view of Defendant. (Id., pp. 17, 22-23). Because it was defendant's decision personally to make, and because a sound strategic reason for the decision made is readily apparent, the Court cannot deem defense counsel's role in the matter as constituting ineffective assistance. Further, the affidavits presented on Defendant's behalf are insufficient to establish a claim of self defense. Consequently, Defendant's motion for new trial should be denied.

*People v. Thomas*, No. 2005-1128-FC, Order, pp. 2-5 (Macomb Circuit Court. April 6, 2009).

Considering the deferential standard of review for claims adjudicated on the merits in the state court, Petitioner has not demonstrated entitlement to habeas relief based on his ineffective assistance of counsel claims. The state trial court stated the correct governing standard, and it applied it in a reasoned manner to the facts of Petitioner's case after holding a three-day evidentiary hearing.

10

As recently explained by the Supreme Court, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. , , 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at —. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, 131 S. Ct. at 788.

The opinion of the trial court, at a minimum, presents a "reasonable argument" that Petitioner's trial counsel satisfied *Strickland's* standard.

The Court has reviewed the state record including the transcript of the evidentiary hearing concerning Petitioner's claims. As reasonably found by the trial court, Petitioner

11

was advised of all plea offers made by the prosecution and rejected them out of hand given the possible immigration consequences. Indeed, the assistant prosecutor testified at the hearing that negotiations never even got to the point of a formal offer because of Petitioner's objections.

Also as correctly noted by the trial court, Petitioner's trial attorney testified that he did not have any difficulty communicating with Petitioner that would require the services of an interpreter. Nor did Petitioner offer any evidence at the hearing how an interpreter would have benefitted his defense. For example, he does not point to any break-downs in communication that resulted in the loss of any information important to his defense.

Furthermore, the trial court correctly noted that trial counsel advised Petitioner not to testify in his own defense because he felt that Petitioner would not make a credible witness. Petitioner admitted that he discussed his right to testify with his attorney, and that a decision was made for him not to testify. Given the testimony presented at the evidentiary hearing, the trial court reasonably concluded that counsel's decision to advise Petitioner to not testify was not deficient.

The same holds true with respect to Petitioner's claims regarding his defense witnesses. There was no evidence presented at the evidentiary hearing indicating that these witnesses would have contributed in any meaningful was to a claim of self-defense. Most pointedly, there was no testimony that any of them witnessed the actual stabbing. And as Respondent correctly notes, such a defense had little chance of success in light of the surveillance video tape and the testimony of the outnumbered victim and his friends which was presented at trial.

Accordingly, the Court finds that the state court's adjudication of Petitioner's

ineffective assistance of counsel claims was not contrary to, nor did it involve an unreasonable application of, the clearly established Supreme Court standard. The petition will therefore be denied.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not debate this Court's resolution of Petitioner's claims, and will therefore deny a certificate of appealability. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because any appeal of this decision would be frivolous.

### V. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

The Court further **DENIES** a certificate of appealability, and **DENIES** permission to proceed on appeal in forma pauperis.

**SO ORDERED.**


                                              s/John Corbett O'Meara
                                              United States District Judge

Date: February 28, 2014

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 28, 2014, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager